## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Greenbelt Division)

| | |
|---|---|
| REGINA CAROL MORRIS<br>1404 Taylor Avenue<br>Fort Washington, Maryland 20744<br><br>     Plaintiff,<br><br><br>     vs.<br><br><br><br>MARYLAND STATE POLICE and<br>LT. ROLAND L. BUTLER (MSP agent)<br>1201 Reisterstown Road<br>Pikesville, Maryland 21208<br><br>     Defendants.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No._____<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

**PLAINTIFF BRINGS THIS ACTION AGAINST DEFENDANTS CLAIMING DISCRIMINATION, HARASSMENT, HOSTILE WORK ENVIRONMENT AND RETALIATION ON THE BASIS OF RACE, COLOR, AND SEX/GENDER**

COMES NOW, the Plaintiff, Regina Carol Morris, an individual and resident of 1404

Taylor Avenue, Fort Washington, Prince George's County, Maryland 20744, and an

employee of the Maryland State Police ("MSP") (Plaintiff) complaining of the

Defendants Maryland State Police, and its agent, Lt. Roland L. Butler (Defendants) doing

1

business as a Police Department at 1201 Reisterstown Road, in the County of Baltimore,

City of Pikesville, Maryland 21208 and for her Complaint stating as follows:


## JURISDICTION AND VENUE


1.  The Court has jurisdiction because the cause of action is based on violation of the

Title VII of the Civil Rights Act 1964, Section 102 of the Americans with disabilities Act

of 1990 (42 U.S.C. 12112) as amended, The Family Leave Act, Title I, Section 102, 29

U.S.C. 2601 et seq. Maryland State Government Article, Section 20-602 et seq. The

defendant is a Police Department of the State of Maryland and its agent, Lt. Roland L.

Butler, is an employee of the Maryland State Police serving the State of Maryland. The

Court also has Supplemental jurisdiction pursuant to USC § 1367


2.  Venue is proper in the US District Court for the District of Maryland, Southern

Division in Greenbelt because Plaintiff resides in Prince George's County and the

defendants serve as an agency/department of the State of Maryland.


## FACTS

3.  Plaintiff is currently employed by the Maryland State Police (MSP). Her current rank

is Corporal and she is assigned to the MSP Forestville Barrack. She has worked as law

enforcement officer with the Department for about 16 years. Plaintiff believes that she

has been discriminated, harassed and retaliated by her employer through the actions of its

agents and officers on the bas of her race, color, sex and disability and that the discrimination, harassment and retaliation against her has amounted to a hostile work environment that has caused her both psychological and physical ill health. A fact the Defendants corroborated on page 3 paragraph 2 of their position statement to the Equal Employment Opportunity Commission ("EEOC") charge No. 846-2012-255512C (attached) which reads:

 *"On June 14, 2011, the claimant (here plaintiff),...A witness to the incident, Trooper William E. Jenkins (Caucasian), submitted an MSP Form 17 to Lieutenant Butler describing the incident ... As a result of that incident, the claimant was taken to a nearby hospital for chest pains."*

4.  Plaintiff was diagnosed with Atrial Fibrillation (AF or A-Fib) and High Blood Pressure. Plaintiff still suffers from these medical issues and has been on treatment and is still taking several medications for these ailments since and to-date.

5.  Plaintiff was promoted to the rank of Corporal August 27, 2008, and assigned to the MSP College Barrack. Defendant Lieutenant Roland L. Butler became her Assistant Barrack Commander in June 2009 at the MSP College Park Barrack. Lt. Butler remained Plaintiff's Assistant Barrack Commander until she was reassigned to the MSP Forestville Barrack on August 27, 2009 – she requested this transfer/reassignment due to the harassment, discrimination and medical issues she developed and suffered as a result of the incessant and unrelenting hostile work environment Defendants created.

6.  On January 11, 2012, Plaintiff along with several other troopers, assigned to the MSP

Forestville Barrack gathered together and submitted a letter to the State Law

Enforcement Officers Labor Alliance (SLEOLA). SLEOLA is the troopers' bargaining

unit/union. They expressed their concerns in a letter regarding the unfair treatment,

deployable conditions, manipulation, retaliation and bullying they are forced to deal with

on a daily basis. (not attached). A meeting was set up for the troopers to meet with Sgt.

Lawson, the SLEOLA union representative (Jimmy Duley), the major for the troopers'

command (Major Jones) and the director of Human Resource Division. After the

meeting, Sgt. Lawson contacted Plaintiff and advised her that the Fair Practice Unit will

be contacting her to make an inquiry their allegations.


7.  On February 1, 2012 at approximately 0915 hours, Plaintiff met with Sgt. Sonja Clark,

a representative from the MSP Fair Practice Unit. This unit handles grievances and

discrimination complaints. Plaintiff met with Sgt. Clark to further express her displeasure

about her workplace conditions – discrimination, harassment, hostile work environment

and retaliation, based on her race, color, sex/gender and medical disability. After she and

her fellow troopers submitted the letter to the SLEOLA, and after the meeting with them,

additional charges against her surfaced.  A new charge she is now faced with subjects her

to termination if sustained at a Trial Board. This new charge was not a part of the

original charges.

8.  On Saturday, December 10, 2011 at approximately 1130 hours, Plaintiff responded to the MSP Forestville Barrack after completing a ride-along of a trooper trainee only to find a sealed envelope in her mailbox. She retrieved the envelop and found a MSP-165 Personnel Counseling Record for a task Lt. Butler felt she did not complete for the Field Training Trooper Program. This Personnel Counseling Record was given to Plaintiff by Lt. Roland L. Butler. Lt. Butler attached the email he had given to me which was dated Sunday, October 23, 2011. Lt. Butler points out on this Personnel Counseling Record that I was on extended sick leave from October 25, 2011 through November 30, 2011. Therefore, the deadlines would not have been met, because I was on an extended sick leave.

9.  On receiving said email from Lt. Butler (dated October 23, 2011), Plaintiff contacted acting First Sergeant John F. Green, on October 25, 2011 and advised him of the email. While on sick leave, Plaintiff sent an email to the affected supervisors and FTTs. Plaintiff's email was dated October 26, 2011. (not attached). Lt. Butler made an untrue statement because he stated I did nothing to meet the deadlines he complained of. However, Plaintiff followed up with the relevant personnel, and spoke with acting F/Sgt. Green to get the deadlines met, even though she was still on sick leave (Plaintiff was forced by Lt. Butler to work to satisfy him while sick and on sick leave).

10.  Lt. Butler became the MSP Forestville Barrack Commander on January 12, 2011. The Barrack had its first staff meeting with Lt. Butler on February 8, 2011, and Plaintiff

was assigned the duty of Field Training Supervisor (FTS). Lt. Butler did not communicate any information to Plaintiff, as to who the FTTs were, the number of trainees reporting, or the date trainees would report to the Barrack. Plaintiff contacted the Assistant Commander, F/Sgt. Rodney Morris to ascertain a start date for the trainees. F/Sgt. Morris advised Plaintiff that he was not aware of any information as well and could not advice Plaintiff on the issue. On March 29, 2011 the trainees reported to the barrack without any advance knowledge of a report date. Plaintiff claims that since Lt. Butler was assigned as the Barrack Commander, he never communicated full information to his subordinates.

11.  In Plaintiff's Personnel Counseling Record, Lt. Butler pointed out that Plaintiff had failed as the FTS at the College Park Barrack. Lt. Butler did not become Plaintiff's Assistant Barrack Commander until late May or June 2009. Plaintiff felt Lt. Butler's complain about her failings as an FTS, was another sign of his fixation on making her life miserable at the MSP, and questions that if Lt. Butler felt she failed with the duties of the FTS at the College Park Barrack, why assign her the exact same duty again when he became the Forestville Barrack Commander?  Plaintiff felt Lt. Butler was setting her up for failure.

12.  At the College Park Barrack, Plaintiff was assigned the duties of FTS not by Lt. Butler, but Lt. Carl Miller. When Plaintiff became the FTS at the College Park Barrack, Lt. Butler was not yet assigned to the Barrack at that time. The Assistant Barrack

Commander then, was F/Sgt. Russell Newell. When Plaintiff was assigned the duties as the FTS at the College Park Barrack, Plaintiff had a Sergeant assigned to her group. The sergeant worked a full-time schedule everyday. The College Park Barrack was assigned only three (3) troopers from the Academy Class. The (3) three troopers had been cut loose and patrolling on their own by the time Lt. Butler became the Assistant Barrack Commander. Since Lt. Butler was not assigned to the barrack at the' time these trainees were in training, Plaintiff claims Lt. Butler could not legitimately make a statement as to the success or failure of the FTT Program. Further, Plaintiff claims that if Lt. Butler felt she did not succeed with running the FTS Program, then why assign her the duties again at the Forestville Barrack? Lt. Butler assigned Plaintiff same duties with the knowledge that Plaintiff's assigned sergeant would be on an extended sick leave.

13.  Plaintiff became acting Sergeant for Group 5 and therefore, supervised five (5) personnel, in additional to overseeing the Program with eight (8) trainees and eight (8) FITs reporting to Plaintiff. Again, Plaintiff felt Lt. Butler was setting her for failure because the above stated responsibilities, constituted work overload for one (1) individual to handle singularly. Plaintiff felt that due to the staffing problems at the barrack, at a minimum, there should have been (2) two supervisors overseeing this program and that it should have been done especially in times of regular days off, as well as, sick leave days.

14.  On November 23, 2011, Plaintiff was advised of an incident which occurred between two (2) of her subordinates while she was absent from the workplace. The incident

involved a Trooper First Class (white male) and Trooper Trainee (black male). Plaintiff was advised that the Trooper First Class used profanity towards this trainee and in a demeaning manner. This information was forwarded up the chain to Lt. Butler from the duty officer (Cpl. Stockton) who was the on duty supervisor that day. On December 10, 2011, Lt. Butler gave this TFC (white male) a MSP-165 Personnel Counseling Record for using profanity and demeaning language towards another fellow trooper. However, September 3, 2011, while Plaintiff was working early shift at the Forestville Barrack, she was advised in her ninth hour of working, that she would not be having a relief for late shift to take over from her. Plaintiff became quite upset (because the usual rule was if for any reason the shift take over person was not going to be available, or will be late, prior notice would be given to the present shift worker at a reasonable time before the end of his/her shift) and used profanity because she was upset. Plaintiff claims she did not direct the profanity directly towards anyone in the room, but she used it as let off of exasperation because she was looking forward to the end of her shift, just to be told at the end of it that she had to cover another shift.

15.  Since Plaintiff did not have a relief, she contacted her immediate supervisor (F/Sgt. Morris) and advised him of the situation. She also advised him that she had to leave the barrack and respond to her residence to administer medications to her elderly mother and to take care of a personal female issue. Additionally, Plaintiff has a letter on file with the MSP Medical Division regarding her mother's Chronic Condition/Recurring Illness and the fact that she was her primary caregiver and Lt. Butler was aware of this.

16.  On September 3, 2011, at approximately 1700 hours, based on statements that Plaintiff was alleged to have made, Lt. Butler responded to the Forestville Barrack and placed her on an Emergency Suspension. Lt. Butler stated "Corporal Morris this is your second outburst, therefore, I am placing you on suspension". The alleged statements were told to him by a (white female) and (white male) both who Plaintiff has superiority of tenure over as she had been on the job for more than ten years before these two employees were hired. Even after Lt. Butler discussed this matter with her immediate supervisor (F/Sgt. Morris) Plaintiff was charged with two (2) formal charges: (1) Unbecoming Conduct - On Duty and (2) Neglect of Duty. Whereas the white male who used profanity was only issued a Personnel Counseling Record which is the lowest level of discipline. Plaintiff felt this was a double standard and discriminatory.

17.  Plaintiff was reinstated to duty on September 7, 2011. Plaintiff reported to work on September 8, 2011. On her return, she first met with Captain Hughes who she felt made the following inappropriate comment: *"Cpl. Morris you know jobs are hard to come by, which I'm sure you value your job"*. Plaintiff felt intimidated and threatened and therefore, did not make any comments. After meeting with Captain Hughes, Plaintiff met with Lt. Butler. When Plaintiff entered Lt. Butler's office he asked Plaintiff: *"how did you like that cooling off period?"*  He then presented Plaintiff with two (2) formal charges for Summary Punishment: (1) Unbecoming Conduct on Duty and (2) Neglect of Duty. After reading the charges and finding discrepancies in them, Plaintiff advised Lt. Butler, that she wished to take her five (5) days to think through the charges and determine

whether or not she wanted to accept the punishment. However, Lt Butler would not have it and told her: *"you are not entitled to the five (5) days."* Plaintiff further asked Lt. Butler if she could consult with her legal counsel (attorney) and he told her: *"you are not entitled to that either."* Plaintiff then asked Lt. Butler so you mean I have to make a decision right here and now? To which Lt. Butler answered *"yes, you have to make an immediate decision, because we want to put this behind us."* Plaintiff refused to sign the documents and told Lt. Butler that she was refusing to sign them because of the discrepancies in the documents. None of Plaintiff's immediate supervisors were invited to Plaintiff's meeting with Lt. Butler as was required This was in violated of Plaintiff's Law Enforcement Officer Bill of Rights (LEOBR) which Plaintiff was  entitled to at the time, as a 13-year employee of the Maryland State Police.


18.  On December 18, 2011 at approximately 1825 hrs, Plaintiff was advised by Cpl. Harvey that TFC Jackson received approximately 5 speed citations on the speed cameras on 1S-95 while operating his assigned unmark police vehicle (L-14). This information was forwarded to Lt. Butler. Plaintiff was advised that TFC Jackson was given a MSP-165 Counseling Record for these infractions. Plaintiff was further advised that Trooper Ward also received several speeding citations on the speed camera while driving his assigned unmarked police vehicle (L-9). Trooper Ward was given a Personnel Counseling Record for those infractions. Both of these troopers helped the Captain and Lieutenant Butler carry out their personal agendas to harass, discriminate and retaliate

against other personnel and therefore fostering a hostile work environment at the

Barracks.

19.  On December 19, 2011 at approximately 1645 hrs, Lt. Butler called Plaintiff into his

office and advised her that he was in receipt of Plaintiff's MSP-165 and asked if Plaintiff

wanted to add any additional comments. Plaintiff answered "no." Lt. Butler said to the

Plaintiff, that: *"it was meant to help you."*

20.  On December 20, 2011, responding for late shift, Plaintiff received Lt. Butler's

comments on the MSP-165 addressing her poor supervisory skills and written comments

from him addressing Plaintiff's refusal to comment and sign the MSP-165.

21.  On June 14, 2011, Plaintiff was transported to Southern Maryland Hospital for

having chest pains and elevated blood pressure. Plaintiff completed and submitted all of

required medical documentation to the Attendance Control Supervisor (F/Sgt. Morris).

First Sergeant Morris submitted all of Plaintiff's medical documentation to the Medical

Division. Additionally, Plaintiff requested Administrative Leave for what she felt was

occupational disease/illness which is documented with the Maryland Worker's

Compensation Commission. The Administrative Leave was approved by the Attendance

Control Supervisor (F/Sgt. Morris) and forwarded through the proper channels. While on

sick leave and during that timeframe, Cpl. Harvey overheard a conversation Captain

Hughes (Regional Metro Troop Commander) had with another supervisor regarding Plaintiff being on Administrative/Sick Leave.

22.  Cpl. Harvey said he overheard the Captain say to another supervisor: *"people around here think they're going to be paid Administrative Leave for being stressed out.  That is not going to 'happen. She will use her own sick leave."* F/Sgt Morris also stated that Lt. Butler and Capt. Hughes made a reference to Plaintiff not having sick leave to cover the time. Therefore Plaintiff was requesting Administrative Leave. Plaintiff felt that this discussion was in breach of HIPPAA Laws. Plaintiff felt that the Captain or Lieutenant should not be discussing her medical situation with anyone employees' medical information is strictly confidential and of a sensitive nature and should be treated as such.

23.  Plaintiff made an appointment with Dr. Donald Alves, who is the State Police medical doctor on June 20, 2011 for her illness. She expressed her work place problems and the fact that she was working in a hostile work environment and discrimination she felt she was being subjected to on a daily basis. Plaintiff told him that the hostile work environment was adding more pain to her other medical issues (high blood pressure and Atrial Fibrillation). Plaintiff's medical documentation was forwarded June 25, 2011, to Lt. Ulysses Perry, Commander Human Resource Division.

24.  On July 19, 2011, Plaintiff requested for Administrative Leave and was denied. She

appealed the denial and submitted all her medical documentation to the medical board,

including documentation from the Maryland Worker's Compensation Commission and

the appeal was overturned. Plaintiff received a letter dated August 25, 2011, from Lt.

Colonel Stewart W. Russell, MSP Chief, Support Services Bureau which granted

Plaintiff's Administrative Leave. After meeting with Dr. Alves, Plaintiff was sent for a

psychological evaluation for fitness of duty. Plaintiff felt that anytime she took sick leave

for her illness, Lt. Butler and Captain Hughes retaliated against her for taking time off

due to her disability, because it kept her away from the workplace for extended amounts

of time. On October 25, 2011 through November 30, 2011, Plaintiff again was out of the

workplace due to her illness/disability. On her return to duty on December 1, 2011,

Plaintiff was given a MSP-165 Personnel Counseling Record for missing a deadline.


25.  Plaintiff is the primary caregiver to her 89 year old elderly mother who has a chronic

condition/recurring illness which also keeps Plaintiff away from the workplace for

extended amounts of time. Plaintiff had taken a family sick leave on December

21, 2011 due to Plaintiff's mother's chronic condition and Lt. Butler ordered personnel to

the Plaintiff's residence to pick up Plaintiff's assigned police vehicle. Lt. Butler has never

ordered that done to any personnel on sick leave. Lt. Butler was also aware that Plaintiff

would also be absent on sick leave from December 22, 2011 for Plaintiff's own

scheduled surgery. Once again, Plaintiff felt that anytime she took sick leave whether it

was for her own illness or family sick leave for her mother's medical issues, she is being

retaliated against, because hers and her mother's illness takes her away from her job.


26.  On Friday, February 24, 2012, Plaintiff returned from extended family sick leave

after caring for her 89-year old elderly mother. Plaintiff was absent from the workplace

February 8 through February 23, 2012. On February 24, 2012 at approximately 1030

hours, Plaintiff was ordered into Lt. Butler's office along with her immediate supervisor

(F/Sgt. Green) and suspended Plaintiff with for a second time. Lt. Butler advised Plaintiff

that her investigation was completed by Sgt. Marc Black and Plaintiff was now being

charged with a Category E violation. Again Plaintiff felt that she was being retaliated

against because she was absent from the workplace for an extended period of time.


27.  Plaintiff was retaliated against because she did not accept the charges presented to

her on September 8, 2011. After being suspended, Lt. Butler gave Plaintiff paperwork

regarding her Emergency Suspension and a MSP Form 17 regarding her temporary

reassignment to another barrack. This temporary work assignment created even greater

burden and hardship for Plaintiff because, the distance was too far away that it made it

impossible as the primary caregiver to her ailing 89 year old elderly mother, to take care

of her, as her workplace became farther away from her residence. Plaintiff thought when

one is reassigned it will be within the vicinity if there is one other MSP Barrack within

the same vicinity (mileage wise) near her residence.

28.  When Plaintiff left the barrack and being transported to her residence, she was not aware of any new charges which had surfaced. However, at approximately 1345 hours (1:45 pm.), Plaintiff was contacted via telephone by acting First Sergeant John Green who came to her residence and handed Plaintiff with the formal charging documents for her to sign and return.

29.  Plaintiff alleges the above and claims that Defendants have violated the following:

**<u>COUNT I</u>**

30.  Plaintiff claims and alleges that Defendants have violated her Civil Rights pursuant to Title VII of the Civil Rights Act of 1964. Title VII prohibits Discrimination, Harassment, Retaliation and conduct that creates a hostile work environment, on the basis of race, color, sex/gender and disability

**<u>COUNT II</u>**

31.  Plaintiff claims and alleges that Defendants have violated Section 102 of the Americans with disabilities Act of 1990 (42 U.S.C. 12112) (ADA) as amended , by discriminating against her, harassing, retaliating against her and creating a hostile work environment for her, on the basis of her illness/Disability. The ADA prohibits discrimination against anyone on the basis of their disability.

## COUNT III

32.  Plaintiff claims and alleges that Defendants have violated her rights under The Family Leave Act, Title I, Section 102, 29 U.S.C. 2601 et seq. by refusing to allow her to take three hours off to take care of her own illness and administer medication to her elderly and ill mother even though she had the right to those hours for such purposes under an already submitted FMLA documentation that was in her file at the time and entitling her to it, by harassing her, creating a hostile environment for her to do her job, and for retaliating against her because she took time off due to illness. The FMLA prohibits employers to discriminate or retaliate against qualified employees like Plaintiff for taking time off to care for themselves or members of their family.

## COUNT IV

34.  Plaintiff claims and alleges that Defendants have violated her Civil Rights pursuant to Maryland State Government Article, Section 20-602 et seq. Maryland State laws, and Maryland's related ADA laws. Maryland State Government Article Section 20-206 et seq. prohibits an employer from taking any discriminatory action against an employer regarding his work, including but not limited to hiring, firing, suspending etc. on the basis of race, color, gender/sex, disability etc.

**WHEREFORE, PLAINTIFF PRAYS for judgment against Defendants for:**

- Compensatory and Punitive Damages;

- Attorneys Fees;

- Permanent Injunctive relief to prevent future discriminatory practice; and

16

- Other Remedies as the Court deems fit.

.

**DEMAND FOR JURY TRIAL**

TRIAL BY JURY IS DEMANDED ON ALL ISSUES TRIABLE BY JURY.

Respectfully submitted this 29th day November, 2013

/s/ Stephen Christopher Swift
Stephen Christopher Swift,  Esq.
Swift & Swift, Attorneys at Law, P.L.L.C.
Suite 200
2121 Eisenhower Avenue
Alexandria, Virginia 22314-4688
Telephone: (703) 418 – 0000
Facsimile: (703) 535 – 8205
E-mail: steve@swift.law.pro
Maryland Federal Bar No. 13,943

*Attorney for Plaintiff*
*REGINA CAROL MORRIS*